OPINION
Defendant, John Blakeman, appeals from a judgment of the court of common pleas suspending his community control status. The court then imposed a sentence requiring Blakeman to serve a term of incarceration for a period of one year in a state institution.
Blakeman was indicted on two counts of forgery. He entered guilty pleas to those offenses and was convicted on his pleas. On March 13, 2000, Blakeman was sentenced to a five year term of community control.
On June 13, 2001, the court found that Blakeman had violated his community control sanctions. The court nevertheless continued Blakeman's community control status and ordered Blakeman to serve up to six months at the Mon Day Community Correctional Institution.
One month later, on July 12, 2001, Blakeman was charged with two further violations of the community control sanctions the court had imposed. One alleged violation arose from his conviction in Miamisburg Municipal Court for violating a temporary protection order. The other alleged violation arose from Blakeman's refusal to participate in the MonDay program.
Blakeman appeared at a hearing before the court held on July 19, 2001, to determine the violations alleged. Blakeman's attorney waived a reading of the charges and a probable cause hearing. She also requested a conference with the court, which was held in chambers. When the court returned on the record, the following colloquy took place between the court and Blakeman's attorney:
 "THE COURT: We're here on a revocation notice, and, Ms. Souther, anything further after the discussion in chambers with Todd Patrick and the prosecutor's office?
"MS. SOUTHER: No, Your Honor.
 "THE COURT: Sir, is there anything you wish to say at this time?" (T. p. 2).
Blakeman explained that his conviction for violation of the temporary protection order arose from a telephone call he'd made from jail, where he was being held for failure to appear in court on a seat belt violation charge. Concerning the other alleged community control violation, Blakeman stated:
"The only reason I turned down the Monday program, the lady that evaluated me for the Monday program told me that the program was not for me, that they would accept me for the money, but she said the program isn't for me. She said, I would suggest in my report that you be released and work your job and pay your child support. She said, I don't see why they would even want you to be evaluated. That's the only reason I even turned the Monday program down." (T. p. 3).
Blakeman went on to explain that, after he declined to participate in the MonDay Program, his probation officer, Todd Patrick, had told him that he would have an opportunity to again appear in court on the matter, but that never happened.
The trial court heard Blakeman's explanations and rejected them, stating: "You have a tendency to blame everyone else but you. You are the one who is responsible." (T. 5). The court then sentenced Blakeman to serve a term of incarceration for a period of one year.
Blakeman filed a timely notice of appeal. He presents a single assignment of error, which states:
 "THE PROBATION REVOCATION HEARING CONDUCTED IN THIS CASE VIOLATED THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO IN THAT THE DEFENDANT WAS DENIED THE RIGHT TO CONFRONT AND CROSS-EXAMINE ADVERSE WITNESSES AND DOCUMENTARY EVIDENCE."
The Fourteenth Amendment to the Constitution of the United States provides that no state shall deprive any person of liberty without due process of law. A person whose liberty is conditioned on compliance with community control sanctions is deprived of even that liberty interest by a finding that he violated those sanctions, which then results in his incarceration. The issue then, and the issue which Blakeman's assignment of error raises is, whether the deprivation to which Blakeman has been subjected comported with the standards which due process of law imposes.
Community control is similar to probation in its detrimental effect on a defendant's liberty interest. Revocation of probation has been held to implicate two due process requirements. The first of those is a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his probation.Gagnon v. Scarpelli (1973), 411 U.S. 778. Blakeman waived his right to a probable cause hearing. Therefore, he cannot claim that the failure to conduct a probable cause hearing deprived him of a due process right, and he makes no such claim.
The second requirement that the due process right imposes is a final hearing to determine whether probation should be revoked. Id.
 "At the final revocation hearing, the State must (1) provide the probationer with written notice of the alleged violations of probation; (2) disclose the evidence against him; (3) give the probationer an opportunity to be heard in person and to present witnesses and documentary evidence; (4) allow him to confront and cross-examine adverse witnesses; (5) afford him a neutral and detached hearing body; and, (6) provide the probationer with a written statement by the fact finder as to the evidence relied upon and the reasons for revoking probation." Gagnon, supra at 782 citing Morrisey; Miller, supra at 104, 326 N.E.2d 259. State v. Gilreath (July 7, 2000), Greene App. No. 2000-CA-1, unreported, p. 2.
Blakeman argues that the hearing held on July 19, 2001, failed to satisfy these requirements because the State neither presented evidence to support the violations alleged nor advised Blakeman of what evidence it might present to support them. This argument goes to the second of the Gagnon requirements.
This court summarized the requirements for a probation revocation proceeding in State v. Bialek (Feb. 17, 1992), Montgomery App. No. 12323, unreported, at p. 2:
 What is needed is an informal hearing structure to assure that the finding of a violation will be based upon verified facts and that the exercise of discretion will be informed by an accurate knowledge of the probationer's behavior. This may be a narrow inquiry. The process should be flexible enough, upon a showing of good cause, to consider evidence, including letters, affidavits, and other material that would not be admissible in an adversary criminal trial. (Citations omitted). Furthermore, the state need only provide substantial evidence that appellant violated his probation in order to satisfy its burden of proof. State v. Mingua (1974), 42 Ohio App.2d 35.
It is undisputed that the two causes of Blakeman's alleged violation were identified and described in the Notice of Community Control Violations filed on July 12, 2001, and that the Notice was duly served on Blakeman. It is also evident from the transcript of the hearing held on July 19, 2001, that the State neither offered evidence to prove the causes alleged nor advised Blakeman of the evidence it might offer to prove them. Some revelations may have occurred during the conference which the court held with counsel in chambers. However, no record of that part of the proceeding is before us.
Blakeman argues that these failures or omissions demonstrate that the final hearing failed to satisfy the evidentiary burdens that Gagnon
imposed on the State, and we agree. However, Blakeman failed to object to these defects when they occurred. A timely objection is required to put the court on notice of error, so that the court has a fair opportunity to correct it.
"Ordinarily, failure to object to due process violations during a probation revocation waives any error. In Matter of Cottrill (July 9, 1998), Ross App. No. 97CA2355 unreported, at *2. However, a party who fails to object to a due process violation at the hearing may still prevail on appeal if the procedural error rises to the level of plain error. Crim.R. 52(B). The plain error doctrine permits an appellate court to reverse the judgment of the trial court if `the error * * * [is] of such nature that the outcome of the hearing would have been otherwise but for the error.' State v. Hannah, (Dec. 15, 1998), Franklin App. No. 98AAP-518, unreported at *2 citing State v. Long (1978),53 Ohio St.2d 91, 97, 372 N.E.2d 804." State v. Gilreath, supra, at p. 2.
We cannot find that the outcome of Blakeman's hearing would have been any different but for the State's evidentiary failures. Blakeman argued that those failures inhibited his ability to show why he declined to attend the MonDay Program, which he intended to do through the State's witnesses. This deprived him of his right of confrontation and cross-examination, according to Blakeman. However, that right is available for exercise only when adverse witnesses testify, and none did. Further, the matters Blakeman wished to present are defensive in nature, and thus were his burden to prove. Blakeman had an opportunity to call these same persons as his own witnesses, per Gagnon. He didn't call them. He can't now complain that he couldn't exercise a right that was fully available to him because the State failed to satisfy its own burden, a failure to which he failed to object.
The assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. and YOUNG, J., concur.